AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED DATE: s/ Danielle M. Connolly 09/26/2025

# UNITED STATES DISTRICT COURT
### for the
### Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>A black in color TCL K24, model T434D cell phone,<br>bearing IMEI/IMSI 016500004594918, currently in the control<br>and possesion of ATF, OKC Field Office | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.  M-25-  568   -STE |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1) & 2 | Felon in Possession of a Firearm, and Aiding and Abetting |

The application is based on these facts:

See attached Affidavit of Special Agent David J. McCauley, Jr., Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days:(_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

David J. McCauley, Jr., Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **Sep 27, 2025**
_____

_____
*Judge's signature*

City and state:  **Lawton, OK**

Shon T. Erwin, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

1.      The property to be search is **a black in color TCL K24, model T434D cell phone, bearing IMEI/IMSI 016500004594918** ("**Subject Device**"), which is currently located in secure storage at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Field Office within the Western District of Oklahoma.  **Subject Device** is depicted below:



2.      This warrant authorizes the forensic examination of **Subject Device** for the purpose of identifying the electronically stored information described in **Attachment B**. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the Government and their support staff for their independent review.

## ATTACHMENT B

1.        All records on the **Subject Device**, described in **Attachment A**, that relate

to violations of 18 U.S.C. §§ 922(g)(1) and 2 that involve **Donnie Ray Ventris**

(**"Ventris"**)**,** including:

     a.        electronically stored information, including, but not limited to the phone directory and/or contact list, calendar, text messages, multi-media messages, email messages, call logs, photographs, and videos;

     b.        any location data indicating the whereabouts of **Subject Device**;

     c.        any information related **Ventris's** schedule or travel;

     d.        any photographs of firearms;

     e.        any photographs of stolen property;

     f.        any phone records between known or unknown co-conspirators;

     g.        any text messages, instant messages, or electronic messages communicating between known or unknown co-conspirators;

     h.        any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information); and

     i.        any bank records, checks, credit card bills, account information, and other financial records, including financial records within applications.

2.        Evidence of user attribution showing who used or owned the **Subject Device**

at the time the things described in this warrant were created, edited, or deleted, such as

logs, phonebooks, saved usernames and passwords, documents, and browsing history:

     a.        records of Internet Protocol addresses used; and

     b.        records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search

terms that entered into any Internet search engine, and records of user-typed web addresses.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, David J. McCauley, Jr., being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession and further described in **Attachment A**, and the extraction from that property of electronically stored information described in **Attachment B**.

2.      I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so since June 2018.  Prior to Employment with ATF, I was employed by the Hampton Police Department.  I have been employed in law enforcement for twelve years.  I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws.  I am currently assigned to the Oklahoma City Field Office and am charged with investigating violations of Federal Law, including violations of the Gun Control Act of 1968, as amended (Title 18, United States Code, Sections 921, et seq.), explosives, arson, alcohol, and tobacco laws.

3.      As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants under the authority of the United States.

4.      The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to secure a search warrant for a cellular device: **a black in color TCL K24, model T434D cell phone, bearing IMEI/IMSI 016500004594918** (hereinafter, "**Subject Device**"), as described further in **Attachment A** (physical description), for evidence of violation of 18 U.S.C. §§ 922(g)(1) and 2 (felon in possession of a firearm, and aiding and abetting the same), as described further in **Attachment B** (description of items to be seized).  **Subject Device** is currently located in secure evidence storage at the ATF Oklahoma City Field Office, within the Western District of Oklahoma.

5.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrant

## PROBABLE CAUSE

6.      On September 8, 2025, Oklahoma Judicial District 23 Violent Crimes Task Force Investigator Tony Long was assigned a fugitive case seeking the apprehension of **Donnie Ray Ventris** ("**Ventris**"), who was wanted by the Kansas Department of Corrections for a parole violation on Montgomery County District Court case number 04CR241, in which he was convicted of aggravated robbery and aggravated burglary.

7.      **Ventris** was first convicted of robbery with a dangerous weapon in Payne County District Court case number CRF-1982-066.  His criminal history includes additional felony convictions in various jurisdictions in Oklahoma for felonies including

grand larceny, escape from a penal institution, attempted robbery with firearms, unauthorized use of a vehicle, attempted escape from a county jail, larceny of a vehicle, conspiracy to commit assault and battery with a dangerous weapon, and multiple convictions for robbery with firearms.

8.      On September 8, 2025, **Ventris's** last known location was reported to law enforcement as 1001 S. Rozell Lane, Apartment 44, Chandler, Oklahoma.  The same day, Investigator Long requested that Chandler Police Lieutenant Dax Phipps make contact with the apartment complex management to confirm **Ventris's** residence there, but apartment personnel advised Lt. Phipps that Ventris had been evicted.

9.      Further investigation revealed that that **Ventris** reported his address to the Department of Transportation as 931 E. 4th Street, Cushing, Oklahoma ("the 4th Street residence").  Investigator Long also determined that a black 2015 Ford F-150 bearing Oklahoma license plate ONU427 was registered to **Ventris** through the Oklahoma Tax Commission at the same address.

10.     Based on this information, Investigator Long and other District 23 Violent Crimes Task Force investigators responded to and conducted surveillance around the 4th Street residence the same day.

11.     On September 8, 2025, at approximately 7:10 p.m., investigators observed the black Ford F-150 bearing Oklahoma license plate ONU427 arrive in front of the 4th Street residence driven by **Ventris**, who was the sole occupant.

3

12.    **Ventris** exited the truck and walked to the rear of the vehicle, at which point investigators approached him and placed him in handcuffs.  As **Ventris** was being arrested, he made a spontaneous utterance that there was a firearm in his vehicle.

13.    Investigator Long advised **Ventris** of his rights under *Miranda*, which **Ventris** acknowledged, agreeing to speak with him.  After being advised of his rights under *Miranda*, **Ventris** advised that there was a pistol in a black case in the center console of the truck.

14.    Investigator Long asked **Ventris** for consent to search the truck, which **Ventris** verbally provided.  Investigators conducted a search of the vehicle in **Ventris's** presence, locating a Smith & Wesson, model Bodyguard 380, .380 caliber pistol, bearing serial number EJL9726, in the center console.

15.    Investigators also recovered a holster and two magazines loaded with .380 caliber ammunition in the glove compartment, as well as a total of approximately 5.6 grams of a substance that field tested positive for marijuana concealed in false Coke and Dr. Pepper cans.

16.    **Ventris** advised investigators that he had purchased the firearm the day before for $500.00 with the intention of leaving Oklahoma before going on to state, "If you all want evidence while you all are here, it's on the blue laptop in the backseat of the truck."

17.    Investigators located a blue in color LP Laptop, model 14-CF2111WM, bearing serial number 5CG3381SZS on the back seat of the truck.

18.     Investigators also located **a black in color TCL K24, model T434D cell phone, bearing IMEI/IMSI 016500004594918** ("Subject Device") on **Ventris's** person during his arrest.

19.     **Ventris** refused to provide any additional information about the source of the firearm but provided the passwords to both the laptop and his cell phone.

20.     I believe that, based on the foregoing facts, there is probable cause to believe that **Donnie Ray Ventris**, a previously convicted felon, possessed a firearm in violation of 18 U.S.C. § 922(g)(1).

21.     Further, as **Ventris** is prohibited from purchasing a firearm legally through a federally licensed firearms dealer due to his felony convictions, I believe that he may have coordinated his purchase of the firearm located in his vehicle using **Subject Device**, therefore I believe that **Subject Device** may contain contact information for an individual or individuals who may have or aided and abetted his prohibited possession of the firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2.

22.     **Subject Device** has been secured at the ATF Oklahoma City Field Office, stored in manner in which the contents, to the extent material to this investigation, are in substantially the same state as they were when the devices first came into the possession of the ATF.  It has remained in secured property at the ATF Oklahoma City Field Office within the Western District of Oklahoma.

## TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage

6

medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each

7

satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may

8

also include global positioning system ("GPS") technology for determining the location of the device.

24.    Based on my training, and experience, I know that **Subject Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

26.    *Forensic evidence.*  As further described in **Attachment B**, this Application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Subject Device** was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Forensic evidence on a device can also

9

indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I am applying would permit the examination of the **Subject Device** consistent with the warrant. The examination may require authorities to

10

employ techniques, including but not limited to computer-assisted scans of the entire

medium, that might expose many parts of the devices to human inspection in order to

determine whether it is evidence described by the warrant.

28.     *Manner of execution.*  Because this warrant seeks only permission to examine

devices already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable

cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29.     I submit that this Affidavit supports probable cause for a search warrant

authorizing the examination of the **Subject Device** described in **Attachment A** to seek the

items described in **Attachment B**.

Respectfully submitted,

DAVID J. McCAULEY, JR.
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on this 27th day of September, 2025.

SHON T. ERWIN
United States Magistrate Judge

11

## ATTACHMENT A

1.      The property to be search is **a black in color TCL K24, model T434D cell phone, bearing IMEI/IMSI 016500004594918** ("**Subject Device**"), which is currently located in secure storage at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Field Office within the Western District of Oklahoma.  **Subject Device** is depicted below:



2.      This warrant authorizes the forensic examination of **Subject Device** for the purpose of identifying the electronically stored information described in **Attachment B**. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the Government and their support staff for their independent review.

## ATTACHMENT B

1.      All records on the **Subject Device**, described in **Attachment A**, that relate to violations of 18 U.S.C. §§ 922(g)(1) and 2 that involve **Donnie Ray Ventris** (**"Ventris"**)**,** including:

      a.      electronically stored information, including, but not limited to the phone directory and/or contact list, calendar, text messages, multi-media messages, email messages, call logs, photographs, and videos;

      b.      any location data indicating the whereabouts of **Subject Device**;

      c.      any information related **Ventris's** schedule or travel;

      d.      any photographs of firearms;

      e.      any photographs of stolen property;

      f.      any phone records between known or unknown co-conspirators;

      g.      any text messages, instant messages, or electronic messages communicating between known or unknown co-conspirators;

      h.      any information related to sources of firearms (including names, addresses, phone numbers, or any other identifying information); and

      i.      any bank records, checks, credit card bills, account information, and other financial records, including financial records within applications.

2.      Evidence of user attribution showing who used or owned the **Subject Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history:

      a.      records of Internet Protocol addresses used; and

      b.      records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search

2

terms that entered into any Internet search engine, and records of user-typed web addresses.

3.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.